Citation Nr: 1237382 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 10-01 167 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD).


ATTORNEY FOR THE BOARD

A. Michel, Associate Counsel











INTRODUCTION

The Veteran served on active duty from August 1989 to December 1989 and from December 1990 to July 1991.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a March 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri that assigned an initial evaluation of 30 percent for the Veteran's PTSD from the effective date of service connection, May 6, 2008. Jurisdiction over the case was subsequently transferred to the RO in Winston-Salem, North Carolina. 

When this case was most recently before the Board in December 2011, it was remanded for evidentiary development. It has since returned to the Board for further appellate action.

The Board notes that, in addition to the paper claims file, there is a Virtual VA electronic claims file associated with the Veteran's claim. A review of the documents in the electronic file reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issue on appeal. 


FINDING OF FACT

The occupational and social impairment from the Veteran's PTSD has more nearly approximated reduced reliability and productivity than deficiencies in most areas throughout the period of this claim.


CONCLUSION OF LAW

The criteria for a rating of 50 percent for PTSD, but not more, have been met throughout the period of this claim. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2011). 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran seeks entitlement to a rating in excess of 30 percent for PTSD. The Board will initially discuss certain preliminary matters and will then address the pertinent law and regulations and their application to the facts and evidence.

Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2011), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2011), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim.

As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. Although the regulation previously required VA to request that the claimant provide any evidence in the claimant's possession that pertains to the claim, the regulation has been amended to eliminate that requirement for claims pending before VA on or after May 30, 2008.

The Board also notes the United States Court of Appeals for Veterans Claims (Court) has held the plain language of 38 U.S.C.A. § 5103(a) requires notice to a claimant pursuant to the VCAA be provided "at the time" or "immediately after" VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004).

The record reflects that the Veteran was provided all required notice in a letter sent in May 2008, prior to the initial adjudication of the claim.

The Board also finds the Veteran has been afforded adequate assistance in regard to the claim for an increased rating for PTSD. Service treatment records and pertinent post-service medical records have been obtained, and the Veteran has been afforded appropriate VA examinations. The Veteran has not identified any other evidence that could be obtained to substantiate the claim, and the Board is also unaware of any such evidence.

In sum, the duties to notify and assist have been satisfied, and the Board will accordingly address the merits of the claim.

Legal Principles

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2011). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (2011).

PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411. The rating criteria are as follows.

A 30 percent rating is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing effective work and social relationships.

A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified; findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient; and above all, a coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21 (2011).

Additionally, when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 4.3 (2011).

Analysis

In accordance with 38 C.F.R. §§ 4.1, 4.2 (2011) and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the Veteran's service-connected PTSD. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. 

Historically, service connection for PTSD was granted in the March 2009 rating decision that assigned a 30 percent schedular rating, effective May 6, 2008. The Veteran appealed. 

After carefully reviewing the evidence of record, the Board concludes that the Veteran is entitled to a 50 percent rating for his service-connected PTSD.

The Veteran submitted his claim for service connection in May 2008 and a lay "buddy" statement in April 2008 in which it was noted that he was a fun-loving guy before service and that his personality changed after service, to include not being social any longer and being quick to anger.

The report of a private examination in June 2008 shows that the Veteran was working as a forklift operator. He reported PTSD symptoms and impairment, to include sleep disturbances; being tense, jumpy, and easily irritable; having nightmares and flashbacks; avoidance; and some marital problems. The examiner noted that the Veteran's thought processes were within normal limits; he was goal directed and logical; his speech was within normal limits; his mood was anxious; his affect was constricted; he denied suicidal or homicidal ideation; his remote and recent memory was intact; and his attention and concentration were slightly affected. The examiner diagnosed PTSD and assigned a Global Assessment of Functioning (GAF) score of 45.

Private treatment records from July 2008 to January 2012 show that the Veteran reported PTSD symptoms and impairment, to include marital problems; sleep disturbances; poor energy; constricted affect; nightmares; flashbacks; depressed feelings; and being easily distressed and irritated. He denied suicidal and homicidal ideation.

The Veteran submitted a statement in January 2009 in which he reported PTSD symptoms and impairment, to include frequent, intrusive thoughts; frequent nightmares (four to five times per week); flashbacks; severe distress at exposure to triggers; avoidance; anhedonia; estrangement and detachment from others; restricted affect; severe sleep disturbances; frequent irritability and angry outbursts; severe concentration and memory problems; hypervigilance and exaggerated startle response; panic attacks; memory problems; depressive symptoms; feelings of helplessness and suicidal thoughts; and frequent auditory and visual illusions and hallucinations.

The Veteran was afforded a VA examination in January 2009. He reported having a "somewhat" good relationship with his daughter; trying to interact with his family, but preferring to be alone; being quickly irritable and easily aggravated; having only one person that he associated with; recurrent, intrusive thoughts; avoidance; and sleep disturbances. The VA examiner noted unremarkable speech; constricted affect; anxious and depressed mood; some difficulty in maintaining focus on conversations; intact orientation to person, time, and place; unremarkable thought process and content; no delusions; good judgment; no homicidal or suicidal thoughts; good impulse control; no episodes of violence; ability to maintain minimum personal hygiene; and memory problems. The Veteran also reported working as a material handler, full time for over 13 years, and that he isolated himself at work, had some arguments with people at work, and missed one to two days of work. The VA examiner diagnosed PTSD and assigned a GAF score of 55.

The Veteran was afforded a VA examination in August 2011 in which he reported PSTD symptoms and impairment, to include marital problems; irritability; sleep disturbances; low energy; loss of appetite; avoidance; diminished interest; feelings of detachment and estrangement; restricted range of affect; difficulty concentrating; hypervigilance; and exaggerated startle response. He denied any suicidal or homicidal thoughts, intentions, or plans. He also reported being laid off from his job two years prior due to cutbacks but that he was currently going to school. The VA examiner diagnosed PTSD and assigned a GAF score of 65. The examiner noted that the best summary for the Veteran's level of occupational and social impairment was mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress.

In the Board's opinion, the evidence satisfactorily establishes that the social and occupational impairment from the Veteran's service-connected PTSD has most nearly approximated reduced reliability and productivity, as required for a 50 percent rating. 

The Board acknowledges that the medical evidence of record does not reflect that the Veteran experiences all of the symptoms associated with the 50 percent schedular rating. Yet the record does show that he has occupational and social impairment with reduced reliability and productivity due to such symptoms as: constricted affect; memory problems; disturbances of motivation and mood; attention and concentration slightly affected; some difficulty in maintaining focus in conversations; and difficulty in establishing effective work and social relationships. He does not have circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; or impaired judgment. However, the Court has held that the symptoms enumerated under the schedule for rating mental disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular disability rating. See Mauerhan v. Principi, 16 Vet. App. 436 (2002).
 
In determining that the Veteran's PTSD warrants a rating of 50 percent, but not more, the Board has considered the GAF scores assigned for the Veteran. GAF scores are based on a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996), citing the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL FOR MENTAL DISORDERS, Fourth Edition (DSM-IV), p. 32.

A GAF score of 41-50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).

A score of 51-60 is appropriate where there are, "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)."

A score of 61-70 is indicated where there are, "some mild symptoms (e.g., depressed mood and mild insomnia or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." 

The GAF scores do not correlate to any specific rating. The Board has found the examination findings and the actual assessments of the Veteran's occupational and social functioning to be more probative than the GAF scores.

A schedular rating of 70 percent rating is awarded for occupational and social impairment with deficiencies in most areas, but the evidence of record does not show the Veteran's PTSD impairment more nearly approximates such impairment. 

To this point, specific symptoms associated with the 70 percent rating include suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships. Review of the evidence of record shows that the Veteran's PTSD caused outbursts of anger but most of the other symptoms were absent. 

Although the Veteran reported suicidal ideation in a January 2009 statement, a symptom under the 70 percent criteria, the record repeatedly showed that he denied suicidal ideation in examination reports. Moreover, in that statement, the Veteran reported that he experienced frequent auditory and visual illusions and hallucinations. While gross impairment in thought processes or communication with persistent delusions or hallucinations are indicative of impairment at the 100 percent level, the Veteran has not reported that his hallucinations are persistent, no evidence of gross impairment in thought processes or communication was found on any of the mental status examinations performed during the period of this claim. In addition, there is no medical evidence showing that delusions or hallucinations have ever been identified as manifestations of the Veteran's PTSD.

Moreover, the Veteran has reported has reported that he has a "somewhat" good relationship with his daughter, tries to interact with his family, and having a person with whom he associates. While he has reported some problems in the work setting, he was unable to maintain fulltime employment with little time off from work until he lost the job due to cutbacks. At the time of the August 2011 examination, he was attending school and that examiner believed that his social and occupational impairment was mild. 

In sum, it is clear that the social and occupational impairment from the Veteran's PTSD does not more nearly approximate deficiencies in most areas than reduced reliability and productivity.


Consideration has been given to assigning a staged rating; however, at no time during the period in question has the disability warranted more than 50 percent. See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

VA must also consider all favorable lay evidence of record. 38 USCA § 5107(b); Caluza v. Brown, 7 Vet. App. 498 (1995). Accordingly, in arriving at the determination above the Board has considered the lay evidence offered by the Veteran in the form of correspondence to VA in which it has generally been asserted that the Veteran is entitled to a higher disability rating for his PTSD due to his reported symptoms. Although the Veteran is competent to report his own overall symptomology, the Board does not find that his occupational and social impairment has more closely approximate the schedular criteria for the next higher evaluation of 70 percent.

The Board has also considered whether this case should be referred to the Director of the VA Compensation and Pension Service for extra-schedular consideration under 38 C.F.R. § 3.321(b) (1). The Court has held that the threshold factor for extra-schedular consideration is a finding on part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111 (2008). 

In the case at hand, the record reflects that the manifestations of the disability are not in excess of those contemplated by the schedular criteria. In sum, there is no indication that the average industrial impairment from the disability would be in excess of that contemplated by the increased rating granted herein. Accordingly, the Board has determined that referral of this case for extra-schedular consideration is not in order.

The Court has recently held that a request for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), whether expressly raised by a claimant or reasonably raised by the record, is an attempt to obtain an appropriate rating for disability or disabilities and is part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case the Veteran has not asserted, and the evidence does not otherwise show, that he is rendered unemployable by his service-connected PTSD; instead, the Veteran reported that he was laid off due to cutbacks and was attending school. The Board accordingly finds a claim for TDIU is not raised in this case.

For the reasons above the Board finds the criteria for a rating of 50 percent, but not more, for PTSD are met. 


ORDER

Entitlement to a 50 percent rating, but not higher, for PTSD is granted, subject to the criteria applicable to the payment of monetary benefits.



____________________________________________
Shane A. Durkin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs