Eugene H. CARPENTER, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–292.

United States Court of Veterans Appeals.

Argued Aug. 31, 1995.

Decided Oct. 5, 1995.

Ronald L. Smith, Olustee, FL for appellant.

A.M. Fent, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; and R. Randall Campbell, Deputy Assistant General Counsel, Washington, DC were on the brief, for appellee.

Before FARLEY, MANKIN, and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a January 28, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied a rating in excess of 50% for post-traumatic stress disorder (PTSD). This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA regarding the increased rating claim.

## I.

The appellant served in the U.S. Marine Corps from July 1967 to February 1969, including service in Vietnam. Record (R.) at 46. In a May 1983 VA psychiatric examination, the examining doctor diagnosed PTSD. R. at 159–60. In July 1983, the VA granted the appellant's claim for service connection for PTSD and assigned a 30% disability rating. R. at 167. The regional office (RO) reduced the appellant's disability rating for PTSD from 30% to 10% in July 1985 (R. at 191), but increased the rating back to 30% in October 1985 (R. at 213–14). The PTSD rating was increased to 50% in August 1987 (R. at 245–46), but reduced to 30% in September 1989 (R. at 269–70) when an August 1989 VA examination did not indicate that a 50% rating was warranted (R. at 264–65). The appellant filed a Notice of Disagreement (R. at 275–76), submitted a letter from his wife (R. at 279–91), and filed a VA form 1–9 (R. at 290) after a Statement of the Case was issued (R. at 285–88).

In May 1990, the appellant requested that his condition be reevaluated (R. at 293), and another VA examination was performed in June 1990 (R. at 306–08). The examining doctor diagnosed PTSD "with severe industrial and social impairment." R. at 308. A hearing was held at the RO in July 1990. R.

at 310–22. In August 1990, the appellant was awarded disability benefits from the Social Security Administration (SSA). R. at 329–30. In October 1990, the VA hearing officer restored the appellant's 50% disability rating. R. at 339–40. The appellant submitted a statement in which he responded, "Please continue my Appeal since the additional evidence now available shows my rating should be 100%." R. at 373. In December 1990, the appellant submitted more medical evidence (R. at 383–96), but the RO issued a confirmed rating decision in that same month, finding that "[a] severe level of dysfunction due to PTSD is not shown" (R. at 398).

A field examination was conducted in June 1991 to determine "the extent of impairment to the veteran's social and industrial functioning" and whether he was capable of handling his own funds. R. at 428–31. The appellant, his wife, his sister, and his brother-in-law all told the field examiner that the appellant had almost no social interaction, and his sister "verified that [he] had lost several jobs because of his nervous condition." *Ibid.* A VA psychiatric examination was performed in May 1991, in which Dr. G. Batizy diagnosed PTSD and found that the appellant had "[d]efinite impairment in his psychosocial functioning." R. at 452. Dr. William F. Flynn, a VA psychologist, performed Minnesota Multiphasic Personality Inventory and Rorschach tests on the appellant in July 1991, and reported, "This test record is consistent with the diagnosis of [PTSD] superimposed on Personality Disorder Not Otherwise Specified, with Schizotypal features." R. at 454. In September 1991, the RO confirmed the assigned 50% rating. R. at 460.

In October 1992, the appellant and his sister provided sworn testimony at a hearing before the Board. R. at 557–82. The Board remanded the claim in December 1992 and instructed the RO to obtain "copies of the evidence which the [SSA] used to reach its conclusion on the veteran's level of disability." R. at 591. A VA medical examination was conducted in February 1993, and Dr. J. Sarasa diagnosed PTSD and a "[p]ersonality disorder mixed with passive/aggressive, ex-plosive and dependent elements." R. at 600–01. Dr. Sarasa also estimated the appellant's "global assessment of functioning" (GAF) to be between 55 and 60. R. at 601. (GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) [hereinafter DSM–IV]. A 55–60 rating indicates "moderate difficulty in social, occupational, or school functioning." *Ibid.*)

The RO obtained records from the SSA regarding the appellant in May 1993, including a report of a July 1990 psychiatric examination performed by Dr. Suresh A. Patel which contained diagnoses of PTSD and passive-aggressive personality disorder (R. at 631). The records included statements from the appellant's private doctor and from Dr. Batizy stating that the appellant suffered from PTSD and that it impaired his ability to work. R. at 643, 653. However, the SSA's "DISABILITY DETERMINATION AND TRANSMITTAL" listed the appellant's primary diagnosis as "Personality Disorders" and noted that no secondary diagnoses were established. R. at 614; *see also* R. at 619, 624, 631. In June 1993, the RO issued a confirmed rating decision, finding that the recent examinations did not make any "definite PTSD findings." R. at 688.

In January 1994, the BVA denied an increased rating for PTSD, stating:

[O]n the basis of [the February 1993 VA psychiatric] examination, no greater than a 50 percent rating is warranted for PTSD. It is clear from the record that the veteran's ability to establish and maintain effective, favorable relationships with people is considerably impaired. Also, he has considerable industrial impairment caused by his psychoneurotic symptoms. However, he also suffers from non-service connected disorders, i.e., post-operative back dysfunction and personality disorders....

Personality disorders are considered congenital or developmental defects, and as such, are not diseases within the meaning of applicable legislation providing compensation benefits. 38 C.F.R. § 3.303(c) [(1994)]. Therefore, disability occasioned

by such defects cannot be considered in a claim for VA compensation due to unemployability.... Here, the veteran is clearly suffering considerable impairment from his service connected PTSD. If impairment from other disorders has combined to produce unemployability, we are unable on that basis to assign a higher rating for his service connected disorder.

R. at 14–15. The Board also denied a higher rating based on an extra-schedular evaluation under 38 C.F.R. § 3.321(b)(1) (1994) (although the Board characterized this issue as "[e]ntitlement to a total disability rating based on individual unemployability due to PTSD" on the cover of its decision). R. at 8, 15. Since the appellant limited his arguments in his briefs and at oral argument to his increased rating claim, the Court deems the § 3.321(b)(1) extra-schedular evaluation claim to have been abandoned on appeal. *Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993).

## II.

■ The appellant claims entitlement to a higher disability rating on two bases. First, he asserts that the BVA's denial of a rating higher than 50% for his PTSD is clearly erroneous. Second, he claims that his personality disorder should be rated with his PTSD as a single condition under 38 C.F.R. § 4.127 (1994) which, according to the appellant, would entitle him to a higher rating. The Court will address each argument in turn.

## A.

■ The appellant's "claim for an increased rating is a new claim, and the Court reviews the Board's findings of fact regarding new claims under a 'clearly erroneous' standard of review." *Cox v. Brown,* 6 Vet. App. 459, 460 (1994); *see also* 38 U.S.C. § 7261(a)(4); *Butts v. Brown,* 5 Vet.App. 532, 535 (1993). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them."

*Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

■ Diagnostic Code (DC) 9411 provides that a 50% rating for PTSD applies when the "[a]bility to establish or maintain effective or favorable relationships with people is considerably impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in considerable industrial impairment." 38 C.F.R. § 4.132, DC 9411 (1994). A 70% rating is warranted when the "[a]bility to establish and maintain effecttve [sic] or favorable relationships with people is severely impaired. The psychoneurotic symptoms are of such severity and persistence that there is severe impairment in the ability to obtain or retain employment." *Ibid.* Finally, the type of disability that warrants a 100% rating is described as follows:

The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic[ ] symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment.

*Ibid.; see also Johnson v. Brown,* 7 Vet.App. 95 (1994) (noting, and agreeing with, a memorandum by the Secretary suggesting that the criteria listed in DC 9411 for a 100% rating are each independent bases for granting such a rating). As the Board correctly noted, personality disorders are not compensable conditions. 38 C.F.R. §§ 3.303(c), 4.127.

The Board relied on the February 1993 VA examination, the most recent psychiatric examination of record, in which Dr. Sarasa reported that the appellant had a GAF of 55 to 60, which, as noted above, corresponds to *"moderate* difficulty in social, occupational, or school functioning." DSM–IV at 32 (emphasis added). Dr. Sarasa also diagnosed a personality disorder in addition to PTSD, and stated, "The main element in [the appellant's] mental status was his anger.... His

passive/aggressive attitude obviously would create serious difficulties in any attempts he would make to function in a working situation." R. at 600–01. This emphasis on the appellant's personality disorder as the predominant cause of his inability to work is echoed in the SSA's Disability Determination Report, which listed his primary diagnosis as "Personality Disorders" and stated that no secondary diagnosis was established (R. at 614), even though the doctor who performed the SSA examination diagnosed him with PTSD (R. at 631). Therefore, as the Secretary contends (Brief (Br.) at 9–11), there is a plausible basis in the record for the Board's refusal to assign a rating higher than 50%.

### B.

The appellant's second argument concerns 38 C.F.R. § 4.127, which provides, in pertinent part:

> [P]ersonality disorders will not be considered as disabilities under the terms of the schedule. Attention is directed to the outline of personality disorders in the APA manual.... However, *properly diagnosed superimposed psychotic disorders developing after enlistment, i.e.,* mental deficiency with psychotic disorder, or *personality disorder with psychotic disorder, are to be considered as disabilities analogous to, and ratable as, schizophrenia, unless otherwise diagnosed.*

38 C.F.R. § 4.127 (emphasis added).

### 1.

■ The Secretary first asserts that this argument is not properly before the Court because it was not raised and adjudicated below, and the Court should refuse to entertain it. Br. at 12–13. In *Akles v. Derwinski,* 1 Vet.App. 118 (1991), the Secretary had argued that since a certain issue had not been addressed below, " 'this Court should summarily reject this new issue.' " *Id.* at 120. However, the Court responded:

> We disagree; this argument completely ignores the nonadversarial nature of the proceedings below and the concomitant duty to assist that statute and regulation impose upon the Secretary.

There is no requirement in the law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking benefits.

*Id.* at 120–21. Accordingly, the Secretary's first argument must be rejected.

### 2.

■ Second, the Secretary argues that "PTSD is not a psychosis" and that § 4.127 provides only that "personality disorder[s] with *psychotic disorder[s]* " are ratable conditions. Br. at 13. The Secretary is correct that PTSD is not a psychotic disorder; the VA regulation characterizes it as a "psychoneurotic disorder" and both the third and fourth editions of the DSM characterize it as an "[a]nxiety [d]isorder." 38 C.F.R. § 4.132 (1994) (schedule of ratings for mental disorders, which lists DC 9411, PTSD, under "Psychoneurotic Disorders," not under "Psychotic Disorders"); DSM–IV at 424 (discussing PTSD in the section dealing with "Anxiety Disorders," not in the section titled "Schizophrenia and Other Psychotic Disorders"); Diagnostic and Statistical Manual of Mental Disorders 236 (3rd ed. 1980) [hereinafter DSM–III] (also characterizing PTSD as an anxiety disorder as opposed to a psychotic disorder).

The appellant, however, does not dispute that PTSD is not a psychotic disorder. Rather, pointing to a 1976 version of a VA training guide, he argues that VA has interpreted the term "psychotic" to include neurotic disorders. The training guide provides: "[P]roperly diagnosed *superimposed* psychotic *or neurotic* disorders developing after enlistment are disabilities within the meaning of the Schedule and are to be rated." *See* Appendix to Appellant's Br. at 5. The appellant contends that this provision constitutes VA's construction of its own regulation, and relying on *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986), he argues that "an agency's construction of its own regulations is entitled to substantial deference."

■ First, we note that the VA training guide in question does not refer to § 4.127 at all. Moreover, as the Secretary has pointed

out, the training guide was rescinded in March 1990. Supplemental Br. at 2. Without expressing an opinion on the effect of that recision, however, and even if we were to accept as VA's interpretation of § 4.127 the statement that a personality disorder superimposed with a "neurotic disorder" should be service connected and rated, the appellant's argument must fail. In *Bowles v. Seminole Rock & Sand Co.*, the Supreme Court stated that when interpreting an administrative regulation, "a court must necessarily look to the administrative construction of the regulation *if the meaning of the words used is in doubt.*" 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945) (emphasis added); *see also Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991) (*"In situations in which 'the meaning of [regulatory] language is not free from doubt,'* the reviewing court should give effect to the agency's interpretation so long as it is reasonable.") (quoting *Ehlert v. United States*, 402 U.S. 99, 105, 91 S.Ct. 1319, 1323–24, 28 L.Ed.2d 625 (1971) (emphasis added)); *Combee v. Principi*, 4 Vet.App. 78, 91 (1993) (quoting *Martin, supra*), *rev'd on other grounds sub nom. Combee v. Brown*, 34 F.3d 1039 (Fed.Cir. 1994). Therefore, the pertinent language of the regulation must be susceptible to multiple interpretations before the agency's interpretation is entitled to any deference.

■ This prerequisite has not been met in this case. While § 4.127 may be ambiguous in other regards, it is not ambiguous with respect to the critical aspect of the regulation at issue here, i.e., that in order for a veteran to obtain service connection for, as a single entity, a personality disorder superimposed with a service-connected mental condition, the service-connected mental condition must be a *psychotic* disorder. There is no need to defer to any interpretation of this regulation in order to decipher its meaning with regard to this point; it is clear on its face.

### 3.

Finally, the appellant argues that another, separate VA "interpretation" of § 4.127, this one contained in a precedential opinion of the VA General Counsel, supports his position. Even if the Court had determined that § 4.127 was ambiguous with respect to the issue in question, this argument would fail. The precedential opinion provides:

> It is clear that congenital or developmental defects[, including personality disorders,] may not be service-connected because they are not diseases or injuries under the law.... We must caution, however, that many such defects can be subject to superimposed disease or injury. If during an individual's military service, superimposed disease or injury does occur, service-connection may indeed be warranted for the resultant disability.

VA Gen.Coun.Prec. 82–90, at 4 ((July 18, 1990) (citation omitted) [hereinafter G.C.Prec. 82–90].

We do not find the quoted language from G.C.Prec. 82–90 to constitute the agency's opinion that psychoneurotic (anxiety) disorders superimposed with personality disorders will be compensated and rated as a single disorder. At most, it can be read as stating that *"many* [personality disorders] *can* be subject to superimposed disease or injury." G.C.Prec. 82–90 at 4 (emphasis added). This statement is far too general, and too vague, to be read as the appellant would have us read it—as stating that whenever a veteran has a personality disorder superimposed with *any* service-connected mental condition, the rating assigned to the veteran should take into account the disabling effects of the personality disorder as well as the other mental condition. *See* Appellant's Br. at 16. Since the veteran does not have a service-connected psychotic disorder, § 4.127 cannot conceivably apply to this case, and the BVA decision must be affirmed.

### III.

Upon consideration of the record and all the pleadings, the January 28, 1994, decision of the Board of Veterans' Appeals is **AFFIRMED**.