Citation Nr: 1456913 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-20 817A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES 

1. Entitlement to an initial evaluation in excess of 50 percent for posttraumatic stress disorder (PTSD).

2. Entitlement to an initial compensable evaluation for right shoulder strain.

3. Entitlement to an initial compensable evaluation for left shoulder strain.


REPRESENTATION

Veteran represented by: Christopher Loiacono, Agent


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

T. Carter, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 2001 to June 2006. His service awards include the Combat Action Ribbon. This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California. During the course of the appeal, the claims file was permanently transferred to the RO in North Little Rock, Arkansas which now has jurisdiction over the claims on appeal.

Following the June 2010 rating decision that granted service connection for PTSD, assigned at 30 percent disabling, effective March 24, 2010, the Veteran submitted notice of disagreements dated July 2010 and March 2011. In a July 2012 Decision Review Officer decision and Statement of the Case, the RO increased the 30 percent evaluation for PTSD to 50 percent, effective March 24, 2010. In August 2012, the Veteran submitted a statement which the RO accepted in lieu of a VA Form 9 (Appeal to the Board). Subsequently, the RO issued a July 2013 Supplemental Statement of the Case. Hence, the issue of an initial evaluation in excess of 50 percent for PTSD has been listed on the title page accordingly. 

In February 2014, the Veteran testified at a Board hearing held before the undersigned Veterans Law Judge in Little Rock, Arkansas. A copy of the transcript is of record. The record was held open for 60 days, and the Veteran submitted a March 2014 psychological evaluation report during that time period.

The Virtual VA and Virtual Benefits Management System (VBMS) electronic claims files contain additional documents pertinent to the present appeal, including the March 2014 psychological evaluation report. 
The Board notes that the Veteran did not file a VA Form 9 in response to the July 2013 Statement of the Case for the issue of an effective date earlier than March 24, 2010 for the grant of service connection for PTSD. The Veteran also did not file a VA Form 9 in response to the July 2012 Statement of the Case for the issue of a total disability rating based on individual unemployability (TDIU). As a result, these issues are not currently before the Board for appellate consideration.

The issues of initial compensable evaluations for right ahnd left shoulder strain and are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

For the entire rating period on appeal, the service-connected PTSD more closely approximates manifestations of occupational and social impairment with deficiencies in most areas due to psychiatric symptoms without total occupational or social impairment.


CONCLUSION OF LAW

The criteria for an evaluation of 70 percent, but no higher, for PTSD has been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 3.321, 3.655, 4.1, 4.3, 4.7, 4.21, 4.126, 4.130, Diagnostic Code (DC) 9411 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided by a letter in April 2010, prior to initial adjudication of the claim. Additionally, where a claim for service connection has been substantiated and an initial rating and effective date assigned, the filing of a Notice of Disagreement (NOD) with the RO's decision as to the assigned disability rating does not trigger additional notice. The claimant bears the burden of demonstrating any prejudice from defective VCAA notice with respect to either of these downstream elements. Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). Neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notice or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, the Board finds that the duty to notify has been met. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). As the record currently stands, VA treatment records, VA examination reports dated May 2010 and November 2012, March 2014 psychological evaluation report, statements from the Veteran, and statement from the Veteran's wife are associated with the record. There are no other outstanding records that the VA has been notified of.

The Veteran also testified at a Travel Board hearing in February 2014. 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge (VLJ) who conducts a hearing fulfill two duties. Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. During the February 2014 Board hearing, the Veteran's representative and the VLJ asked questions to ascertain the severity of his service-connected PTSD. No pertinent evidence that might have been overlooked and that might substantiate the claim was identified by the Veteran or his representative. The hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim. Therefore, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2). 

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose at any point during the appeal period. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran are to be avoided); Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal. 

Service-Connected PTSD

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the veteran's favor. 38 C.F.R. § 4.3. 

When entitlement to compensation has been established and a higher initial evaluation is at issue, the level of disability at the time entitlement arose is of primary concern. Consideration must also be given to a longitudinal picture of the Veteran's disability to determine if the assignment of separate ratings for separate periods of time, a practice known as "staged" ratings, is warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). 

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

The Veteran seeks a higher initial evaluation for PTSD, rated as 50 percent disabling for the entire initial rating period from March 24, 2010 to the present. This disability is rated under 38 C.F.R. § 4.130, DC 9411. This evaluation contemplates occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-term and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent evaluation is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); or an inability to establish and maintain effective relationships.

A maximum 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; danger of hurting self or others; intermittent inability to perform activities of living (including maintenance of minimal hygiene); disorientation to time or place; or, memory loss for names of close relatives, occupation, or own name.

The nomenclature employed in the portion of VA's rating schedule that addresses service-connected psychiatric disabilities is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (DSM-IV). See 38 C.F.R. § 4.130. DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. 

Evaluation under 38 C.F.R. § 4.130 is symptom-driven, meaning that symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating under that regulation. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). 

According to the applicable rating criteria, when evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126(a). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. Further, when evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely the basis of social impairment. 38 C.F.R. § 4.126(b). 

The service-connected PTSD is rated as 50 percent disabling for continued disturbances of motivation with increased irritability and GAF score of 50, as documented in an August 2011 Vet Center psychiatric/psychological evaluation report. The Board finds that the criteria for an evaluation of 70 percent, but no higher, has been met for the entire initial rating period from March 24, 2010 to the present. 

Review of the evidence reflects that on VA examination through QTC Medical Services in May 2010, the Veteran reported his preference to be alone and symptoms of helplessness, intense guilt, nightmares, flashbacks, sleep impairment, and outbursts of anger. He was assigned a GAF score of 55 and his psychiatric symptoms were characterized as mild to moderate. The GAF score reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See e.g., Carpenter v. Brown, 8 Vet. App. 240, 242-44 (1995).

Results from an August 2011 Vet Center evaluation revealed a markedly limited ability to perform most of the requested tasks, as well as deficiencies in judgment, mood, work, and family relations. The Veteran was also noted to have memory impairment, persistent irrational fears, depression affecting his ability to function, difficulty adapting to stressful circumstances, intrusive recollections of a traumatic experience, unprovoked hostility and irritability, and inability to maintain effective relationships. A GAF score of 50 was assigned, which reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). See e.g., Carpenter, 8 Vet. App. at 242-44.

Results from an October 2012 Vet Center evaluation reveal symptoms of disturbing memories, thoughts or images, anxiety, avoidance of thinking and talking about stressful military experiences, memory impairment, loss of interest in previously-enjoyed activities, distance from others, easily startled, sleep impairment, limited patience, and super alert behavior on a daily basis. The Veteran was described to have chronic and severe PTSD.

On VA examination in November 2012, his psychiatric disability picture was described as occupational and social impairment due to mild or transient symptoms. The examiner specified the veteran has increased anxiety when driving in traffic and in crowds. The examiner also noted recurrent recollections and distressing dreams, avoidance, diminished interest in activities, sleep difficulty, irritability, hypervigilance, exaggerated startle response, depressed mood, and anxiety. The examiner also found that employment activities were not affected by the Veteran's PTSD. 

At the February 2014 Board hearing, the Veteran reported his PTSD symptoms include a lot of anxiety, depression, and irritability. He finds it hard to concentrate a lot of times. At least once or twice a week he has anxiety attacks, which he described as a nervous feeling, shakiness, and chest tightens up, almost like heart attack sometimes. These attacks last for a couple of hours and are triggered while driving, hearing loud noise from his children and planes flying over head near his home, and interacting with large groups of people. He reportedly limits socialization to just his wife and children, does not eat in restaurants, and grocery shops very early in the morning. With regard to depression, he testified experiencing symptoms once or twice a week, described as not wanting to go outside, which he previously enjoyed, and crying spells a few times a month. The Veteran described his irritability as having a short fuse and not a lot of patience, and occurs quite regularly while driving. His last physical altercation was several years ago and last verbal altercation was a couple of months ago as a result of his irritability. He also noted not really getting along with his family, with the exception of his wife and children; however, he does have to step away from them quite often because of his psychiatric symptoms. Lastly, the Veteran described exhibiting obsessive behavior, to include not letting his family enter the house without him first going through it, making sure everything is locked before going to bed, and keeping loaded weapons next to him while at home.

In a February 2014 statement, the Veteran's wife reported he is unable to establish and maintain healthy relationships outside the home. The Veteran demonstrates obsessive rituals by securing the home before re-entry and checking all the locks. He leaves work two hours early to avoid traffic, does not dine in restaurants, and experiences sleep impairment due to anxiety, nightmares, and muscle tightness. She reported witnessing the Veteran experiencing guilt and illogical speech during periods of depression, as well as panic attacks triggered by cries of their children as infants.

Most recently, the Veteran underwent a psychological evaluation in March 2014. The report documents the Veteran's current symptoms include insomnia, anhedonia, inattention, lethargy, memory impairment, panic attacks, withdrawal from daily activities and social isolation, distressing memories, nightmares, cold sweats during sleep, hyperarousal, and hypersensitivity including startle effect and jumping at loud noises. Following the evaluation, he was assigned a GAF score of 45, which reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). See e.g., Carpenter, 8 Vet. App. at 242-44. The psychologist summarized the Veteran exhibits extreme psychiatric symptoms, to include poor memory and attention, which affects his daily mobility, impairs his daily functioning, and limits his work duties. 

The Veteran's assigned GAF scores have decreased throughout the pendency of this appeal, thus demonstrating a worsening of his psychiatric disability picture consistent with serious symptoms and impairment demonstrated of record. The Board finds that the Veteran's PTSD more closely approximates manifestations of occupational and social impairment with deficiencies in work, family relations, judgment, thinking, and mood due to obsessional rituals, anxiety attacks, depression, irritability with verbal and physical altercations, inability to establish and maintain effective relationships outside the home, memory impairment, sleep impairment, difficulty with concentration, and hypervigilance. As a result, the Veteran's psychiatric symptoms are more appropriately rated under the criteria for a 70 percent disability rating.

The Board also finds, however, that the evidence is against an initial evaluation in excess of 70 percent as the service-connected PTSD is not more closely productive of total occupational and social impairment due to psychiatric symptomatology.

At the May 2010 VA examination, the Veteran noted being unemployed since February 2010 because he could not get along. The Veteran's wife also noted in her February 2014 statement that he quit his previous job due to an inability to tolerate stressful situations and tension with supervisors. Nevertheless, subsequent evidence shows the Veteran has been gainfully employed since 2012 and that he has maintained a relationship with his wife and children during the course of the entire initial appeal period. The November 2012 VA examiner concluded that the Veteran's physical and sedentary employment activities are not affected by his PTSD symptoms. It was noted the Veteran is in a job well-suited for him which requires primarily outside work and the Veteran is doing well in school. At the February 2014 Board hearing, the Veteran testified as to how he alters his driving schedule every morning when he goes to work and affirmatively noted that he is currently working as a hydrologic technician. 

The March 2014 psychological evaluation report documents the Veteran has been in his current position since 2012, which the Veteran attributes to the fact that he spends most of his work time outdoors and has few interactions with people. Moreover, the psychologist summarized that the Veteran can perform very limited work activities on a sustained, regular basis, and the Veteran is performing gainful employment with accommodations (works alone, no interaction with others).

Thus, although the Veteran's PTSD manifests significant social and occupational impairment, it does not more closely approximate manifestations of total occupational or social impairment due to his psychiatric symptoms. Throughout the appeal period, he has not demonstrated the inability to hold and sustain employment nor maintain any type of social relationships.

With respect to the entire initial rating period on appeal, the Board is aware that the symptoms listed under the next-higher hating of 100 percent is essentially examples of the type and degree of symptoms for that rating, and that the Veteran need not demonstrate those exact symptoms to warrant a higher initial rating. See Mauerhan v. Principi, 16 Vet. App. 436 (2002). Moreover, entitlement to a 100 percent evaluation for the initial appeal period requires sufficient symptoms of the requirements, or others of similar severity, frequency, or duration, that cause the specific type of occupational and social impairment. See Vazquez-Claudio, 713 F.3d at 117-18. In this case, the Board has considered the next higher rating for the initial appeal period but finds that the period on appeal is rated appropriately.

The Board has considered the Veteran's reported history of symptomatology for his service-connected PTSD, as well as his wife's observations of the Veteran's psychiatric symptomatology. They are competent to report such symptoms and observations because this requires only personal knowledge as it comes through their senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, they are not competent to identify specific occupational and social impairment levels due to the service-connected psychiatric disability picture according to the appropriate diagnostic code and relevant rating criteria. In this case, such competent evidence concerning the nature and extent of the Veteran's disability has been provided in the medical evidence of record. As such, the Board finds these records to be more probative than the Veteran's and his wife's subjective complaints and worsened symptomatology. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991).

An extra-schedular evaluation may be provided for exceptional cases. 38 C.F.R. § 3.321. The threshold factor (first step) for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008). Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral under the next step is required.

In the second step, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). If such an exhibition is determined, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for Completion of the third step - a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id. 

Turning to the first step of the extra-schedular analysis, the Veteran's level of severity and symptomatology, specifically, the social and occupational impairment due to his PTSD is reasonably described by the relevant rating schedule (38 C.F.R. § 4.130, DC 9411). Although many symptoms are listed in the rating criteria, the Board looks to all symptoms caused by the Veteran's psychiatric disorder to determine overall impairment. The Veteran has not alleged psychiatric symptoms that would not be considered within that criteria. Thus, the Board finds the schedular rating criteria for this disability is adequate. Nevertheless, the Board finds the Veteran's exceptional disability picture does not exhibit other related factors such as those provided by the regulation as "governing norms." Review of the record shows that the Veteran testified at the February 2014 Board hearing that he has had to leave work at least twice over the past two years because of a bad anxiety attack. The Board finds that the Veteran's reported frequency of time lost from work because of his PTSD does not rise to the level of an exceptional disability picture to render referral for extra-schedular consideration. As such, even in regard to the collective and combined effect of all of the Veteran's service-connected disabilities, no referral under the third step for extra-schedular consideration is required under the circumstances of this case. See Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014).


ORDER

An initial evaluation of 70 percent, but no higher, for PTSD is granted, subject to the criteria applicable to the payment of monetary benefits.


REMAND

In the June 2010 rating decision, the RO denied service connection for right shoulder strain and service connection for left shoulder strain. In July 2010 and March 2011, the Veteran noted his disagreement with the June 2010 rating decision, and a July 2012 statement of the case (SOC) was issued confirming the previous denial for these issues. In October 2012, the Veteran reiterated his disagreement, and in a July 2013 rating decision the RO granted service connection for these issues, both assigned as noncompensable (0 percent), effective March 24, 2010. In January 2014, the Veteran's representative submitted a notice of disagreement (NOD) with the noncompensable evaluations for the service-connected right and left shoulder strains. 

Where the record contains an NOD as to an issue, but no SOC, the issue must be remanded to the originating agency to issue an SOV and to provide the claimant an opportunity to perfect the appeal. See Manlicon v. West, 12 Vet. App. 238 (1999). In this case, an SOC was not issued for the issues of an initial compensable evaluation for right shoulder strain and an initial compensable evaluation for left shoulder strain. Thus, the Board finds that a remand is required.

Accordingly, the case is REMANDED for the following action:

Issue a Statement of the Case to the Veteran and representative addressing the issues of an initial compensable evaluation for right shoulder strain and an initial compensable evaluation for left shoulder strain. The Veteran and representative should be advised of the time limit in which to file a Substantive Appeal. Then, only if the appeal is timely perfected, should the perfected issue(s) be returned to the Board for further appellate consideration, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs