﻿Citation Nr: 18132493
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 10-11 974
DATE: September 6, 2018
ORDER
Entitlement to an initial disability rating in excess of 70 percent for posttraumatic stress disorder (PTSD) is denied.
FINDING OF FACT
At no point during the appeal period has the Veteran’s service-connected PTSD been manifested by symptoms of the type and extent, frequency and/or severity to indicate total occupational and social impairment.
CONCLUSION OF LAW
The criteria for a disability rating in excess of 70 percent for service-connected PTSD have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on a period of initial active duty training from July 1964 to December 1964 he served on a period of active duty from December 1967 to April 1969, to include service in the Republic of Vietnam.
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a May 2008 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO) in which granted service connection for PTSD and assigned an initial disability rating of 50 percent effective January 26, 2007 (the date of claim). Ultimately, a disability rating of 70 percent was assigned for the Veteran’s service-connected PTSD back to January 2007. 
In July 2007 the Board rendered a decision on the Veteran’s claim for an increased disability rating for PTSD and granted entitlement to a 70 percent rating back to the initial date of service connection in 2017. At this time the Board also remanded the issue of entitlement to a total disability rating based on individual unemployability (TDIU). In February 2018 the United States Court of Appeals for Veterans Claims (Court) vacated the Board’s decision in as much as a 100 percent schedular disability rating was not granted for the Veteran’s PTSD and remanded the case pursuant to a Joint Motion for Remand (JMR). 
In February 2018 a separate Board decision granted entitlement to TDIU effective back to the date of service connection for PTSD in 2007; thus, the Veteran is receiving the 100 percent rate of compensation for the entire period on appeal. 
Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.
Pursuant to the General Rating Formula for Mental Disorders, a 50 percent disability rating is warranted where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereo-typed speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130.
A 70 percent disability rating is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessive rituals which interfere with routine activities; intermittently illogical obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. Id.
A 100 percent rating is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.
The symptoms recited in the criteria in the rating schedule for evaluating mental disorders are “not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating.” Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In adjudicating a claim for an increased rating, the adjudicator must consider all symptoms of a claimant’s service-connected mental condition that affect the level of occupational or social impairment. Id. at 443. 
When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, length of remissions, and the Veteran’s capacity for adjustment during periods of remission. 38 C.F.R. § 4.126(a). The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. Id. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126(b). 
The record includes Global Assessment of Functioning (GAF) scores that clinicians have assigned. The GAF was a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV); Carpenter v. Brown, 8 Vet. App. 240 (1995). 
Clinicians dealing with mental health issues currently use the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). Given the procedural posture of this appeal, the DSM-5 applies. See 80 Fed. Reg. 14308 (Mar. 19, 2015) (DSM-5 applies to claims received by VA or pending before the agency of original jurisdiction on or after August 4, 2014).
The Court has noted that the DSM-5 eliminated GAF scores because of their conceptual lack of clarity and questionable psychometrics in routine practice, and further stated that an adjudicator is not permitted to rely on evidence that the American Psychiatric Association itself finds lacking in clarity and usefulness. The Court explained symptoms should be the primary focus when assigning a rating for a psychiatric disorder and clarified that the use of numerical GAF scores as a shortcut for gauging psychiatric impairment would be error. Further noted was that the adequacy of medical examinations has never depended upon the use or inclusion of GAF scores. Golden v. Shulkin, 29 Vet. App. 221 (2018). Given the above, the Board finds the GAF scores in this case lack any probative value and as a result will not be further discussed. 
In April 2008, the Veteran was first afforded a VA PTSD Compensation and Pension examination, in conjunction with his claim for service connection at which time he was diagnosed with PTSD. During that examination, he reported that he was “unhappy,” that he was not in control of his emotional well-being, and that he only slept up to four hours per night in two-hour segments. He denied suicidal ideation and stated that he showered daily and shaved every other day. He also reported the following: that he had three failed marriages; that he had a son, with whom he had a poor relationship with during the son’s formative years because he was emotionally unavailable to him; that he had been with his current girlfriend for the past 24 years, but that he had some emotional difficulty in bonding with her and that he did not sleep in the same bed with her for fear of striking her during his nightmares; that he had a few friends and interacted only with family members; and that he has given up his hobbies. He also reported that he had been working steadily as a semi-truck mechanic up until his retirement a month ago. 
On examination, the VA examiner noted the following about the Veteran: that there was no evidence of auditory or visual hallucinations; that his activities of daily living appeared to be within normal limits; that he was oriented to person, place and time; that he did not have ritualistic behaviors that interfered with his daily routine; that there was no evidence of panic attacks; and that there were no definitive reports of impulse dyscontrol. 
The VA examiner found that the Veteran experienced the following PTSD symptoms: recurrent distressing dreams; inability to recall an important aspect of the trauma; feelings of detachment and estrangement from others; restricted range of affect (i.e., not able to have loving feelings); difficulty falling or staying asleep; exaggerated startle response; and irritability or outbursts of anger. He noted that the Veteran could take care of his activities of daily living, but remained self-isolating and minimally interactive with others. He also noted that the Veteran remained somewhat isolated in his living environment with a few neighbors near his home. He also noted that the Veteran’s current relationship was fraught with problems with his psychosocial isolation, his irritability, liable temper, as well as his inability to express himself in a positive emotional manner. He also noted that the Veteran was able to have a positive interaction with his siblings, but that overall, his group of friends in his earlier life was not available to him. He opined that, with respect to the Veteran’s functional limitation, that there was occasional decrease in work efficiency as well as inability to perform social tasks due to the Veteran’s ongoing psychological symptomatology. This matches the rating criteria for the assignment of a 30 percent disability rating. See, 38 C.F.R. § 4.130, Diagnostic Code 9411.
In November 2008, the Veteran underwent a private psychological evaluation with Dr. W.A., a psychologist, at which time he was diagnosed with PTSD and mood disorder. During that examination, he reported that he experienced extensive difficulties with anger control, including that he had “ ‘snatched up’ his girlfriend, in addition to his having thrown objects and slammed doors.” He also reported that he had a couple of friends, but that he tended to stay to himself, explaining that he did not “go to bars” and that he did not “associate.” A marked pattern of homicidal ideation was acknowledged by the Veteran. On examination, Dr. W.A. noted that the Veteran’s speech was quite normal in terms of manner and content; that the Veteran was oriented to person, place, and time; that the Veteran’s immediate/recent memory fell within normal limits; and that the Veteran’s remote memory appeared intact. She also noted the following about the Veteran: that his impulse control fell below normal limits; that his form of thought was remarkable for circumstantiality; that his thought content was consistent with the presence of homicidal ideation; that his affect was labile and generally intense; that his attention capacities fell below normal limits; that his concentration abilities fell below normal limits; and that his judgment and insight fell below normal limits. 
Dr. W.A. found that the Veteran experienced the following PTSD symptoms: recurrent intrusive thoughts; recurrent nightmares; night sweats; cognitive and physiological responses to trauma cues in reaction to loud noises; persistent avoidance associated with traumatic experiences; inability to recall important aspects of the trauma which he was exposed; markedly diminished interest and participation in significant activities; feelings of detachment or estrangement from others; restricted range of affect; sense of a foreshortened future; insomnia (i.e., difficulties with sleep onset and terminal waking); severe troubles with irritability and angry outbursts; marked difficulties with anger control; concentration problems; hypervigilance; exaggerated startle responses; unable to describe his typical mood state; psychomotor agitation; fatigue and loss of energy; recurrent thoughts of death; history of suicidal ideation (with no intent); and a marked pattern of homicidal ideation (acknowledged). She described these symptoms as severe. She found there to be social and work-related functional impairment, as well as significant cognitive difficulties, in the form of problems with attention, concentration, and memory for events in the recent past. She also found there to be difficulties with impulse control, as evidenced by the Veteran’s difficulty with irritability and angry outbursts, and that the Veteran had homicidal tendencies. She opined that the Veteran was unable to maintain a normal standard of living. She assigned the Veteran a GAF score of that was significantly lower than any other of record “based on his difficulties in multiple areas, including social functioning, employment functioning, family relationships, judgment-related issues, thinking difficulties, and mood.” 
In a November 2008 correspondence, the Veteran’s sister, a registered psychiatric nurse, indicated that the Veteran experienced the following symptoms due to his PTSD: anger, anxiety, depression, nightmares, sleeplessness, violent outbursts, irritability, exaggerated startle response, and an inability to express his feelings.
In February 2010, the Veteran underwent another VA PTSD examination, in which he was diagnosed with PTSD and mood disorder. At that examination, he complained of the following: losing interest in everything; irritability; avoiding other people and wanting to stay alone; “being on guard” all of the time; having nightmares one to two times weekly; avoiding certain reminders of Vietnam; and problems with sleep and concentration. He also reported that his girlfriend of 25 years had recently left him because she “could not put up with my moods.” He also reported that he occasionally socialized with his brother, and that he had contact with his sister (with whom he was currently living with). On examination, the VA examiner noted that the Veteran’s mood was depressed and angry, and that his affect was constricted to a depressive range. He also noted the following about the Veteran: that he had adequate hygiene; that he performed activities of daily living independently; that he had adequate attention and comprehension skills; that there were no abnormalities in his speech or behavior; that his thought processes were focused, rational, and generally logical; his remote and recent memory were good; and that his judgment and insight were fair. The Veteran denied having any hallucinations or delusions.
The VA examiner found that the Veteran experienced the following PTSD symptoms: nightmares (one to two times per week); intrusive thoughts; avoidance associated with traumatic experiences; hyper-alertness; exaggerated startle response; sleep problems; irritability; and problems with concentration. He also found that the Veteran’s PTSD symptoms contributed to the Veteran’s depressive mood, his social isolation, and loss of interest. He indicated that the Veteran’s PTSD was moderate. He opined that the Veteran’s PTSD symptoms caused some impairment in his ability to enjoy certain social activities and complicated his social relationships. 
In a March 2010 statement, the Veteran reported that he had lost his girlfriend of 25 years and his home (having nowhere to live but with family). He also reported that he stayed away when his siblings got together for special occasions to avoid arguments and fights, and that he isolated from some friends with whom he used to be able to spend time. He also reported that he slept in one to two-hour shifts, frequently awakened by nightmares and unable to return to sleep. He also reported that his irritability had gotten so bad that he thought he was going to kill someone. He also reported that he took an early retirement because he had become so agitated toward his boss that he thought he was going to kill him. He also reported feeling angry, sad, and hostile towards everyone. He also endorsed having feelings of hopelessness and shame, as well as flashbacks. He also reported that he struggled with his feelings and thoughts, and that he felt like he was going crazy. He stated that he didn’t care if he lived or died.
In June 2016, the Veteran underwent another VA PTSD examination, at which time he was diagnosed with PTSD and major depressive disorder (MDD). At that examination, he reported that he didn’t get a lot of sleep (i.e., three to four hours at a time and usually waking up one hour after falling asleep). He also reported that he continued to not have good relationships with his sons; that he had no contact with his family; that he had no friends; that he just stayed in his house alone; that he didn’t like to be around a lot of people; and that other than going to stores or getting fast food and watching television, he engaged in no other activities. 
The VA examiner found that the Veteran experienced the following symptoms: depressed mood; anxiety; suspiciousness; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; chronic sleep impairment; mild memory loss, such as forgetting names, directions or recent events; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or work like setting; inability to establish and maintain effective relationships; and suicidal ideation (but the Veteran was certain that he would not act on it). He indicated that the Veteran had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. This corresponds to the criteria contemplated by a 70 percent disability rating. 
VA outpatient treatment records dated from 1998 to 2017 have been obtained and reveal that the Veteran has received regular mental health treatment throughout that period. 
An April 2007 treatment record, as referenced by the JMR, indicated that the Veteran had depressed mood with flat affect but he was also alert, oriented, made good eye contact. He had no hallucinations, delusions, suicidal thoughts, or homicidal thoughts. His depressed mood was related to a current life stressor of his son having recently been shot. A treatment note dated the next month, May 2007, indicated that the Veteran’s mood was appropriate but restricted. 
In a December 2009 VA psychiatry treatment note shows that the Veteran was oriented and had logical and coherent speech/thought processes and denied having delusions or hallucinations. 
A May 2010 VA psychiatry treatment note indicates that the Veteran presented with continued complaints of poor sleep. He denied having delusions or hallucinations. On examination, the psychiatrist noted that the Veteran was oriented and had logical and coherent speech/thought processes. VA psychiatry treatment notes dated from 2011 to 2014, reflect the Veteran was oriented and had logical and coherent speech/thought processes. Also, the Veteran denied having delusions or hallucinations.
A February 2015 VA psychiatry note documents that the Veteran had a sad mood with fair range affect, but he was oriented and had logical and coherent speech/thought processes. The Veteran denied having delusions or hallucinations.
The Board notes that, in addition to service-connected PTSD, the medical evidence above reflected a diagnosis of mood disorder/ major depressive disorder (MDD). Where it is not possible to distinguish the effects of nonservice-connected conditions from those of a service-connected condition, the reasonable doubt doctrine dictates that all symptoms be attributed to the Veteran’s service-connected disability. See Mittleider v. West, 11 Vet. App. 181 (1998). Here, the Board finds that the evidence does not clearly distinguish the symptoms of the Veteran’s service-connected PTSD from his other diagnosed nonservice-connected psychiatric disability. In this regard, the February 2010 VA examiner stated that it was difficult to separate the Veteran’s mood disorder symptoms from his PTSD symptoms. Also, although the June 2016 VA examiner indicated that it was possible to differentiate the PTSD symptoms from the MDD symptoms, the examiner was ultimately not definitive in listing which symptoms were attributable to each diagnosis (e.g., saying certain symptoms were “related more” and indicating that some of the symptoms could not be “meaningfully distangled”). Thus, the Board will afford the Veteran the benefit of the doubt, and attribute all the Veteran’s psychiatric symptoms to PTSD for the purposes of assessing the severity of that disability. Id. 
Overall, the evidence is against a finding that the Veteran’s PTSD results in total occupational and social impairment. 
The February 2018 JMR indicated that the Board did not discuss evidence that suggests the Veteran suffers from gross impairment in communication or grossly inappropriate behavior. The evidence referenced included: the Veteran’s report that he “rant[s,] rave[s], [and goes] off the deep end,” at the June 2016 Compensation and Pension Examination; Veteran mood being depressed with flat affect noted in an April 2007 VA treatment note; his sister’s report that he is unable to express himself in a positive emotional manner; his 2010 statement that he cannot express his feelings without becoming angry, sad, or hostile; and lay reports that he had violent outbursts such as losing a 25 year relationship due to outbursts and threats of violence; a statement that his irritably was so bad that at times he thought he was going to kill someone. The Board acknowledges this evidence. However, while severe behavior is sometimes indicated it does not show gross impairment in communication or grossly inappropriately behavior indicative of total occupational and social impairment. Notably, the April 2008 VA examiner noted no ritualistic behavior and no definitive reports of impulse dyscontrol, the February 2010 VA examiner noted no impairments in speech and no abnormalities in behavior, treatment records show logical and coherent speech and thought processes, and no provider has found gross impairment in thought process or communication. Simply put, despite these reported symptoms the Veteran is still able to communicate and function and has done so on a consistent basis. VA treatment records show that the Veteran does communicate and participate meaningfully in his treatment. Other VA treatment records show that the Veteran is able to participate with appropriate behavior and communicate without gross impairment with respect to his treatment for his other medical conditions. 
The JMR also stated that the Board did not discuss potential favorable evidence in finding that Veteran did not suffer from total occupational and social impairment due to such symptoms as being in persistent danger of hurting himself or others. The Board previously explained that, even though the Veteran indicated experiencing suicidal and homicidal ideation in November 2008, March 2010, and June 2016, such ideation was specifically noted or indicated to be without any intent to act, indicating no danger, let alone persistent danger, of the Veteran hurting himself or others. The JMR indicated that the Board did not discuss Veteran’s report, during a November 2008 private psychological evaluation, that he “snatched up” his ex-girlfriend and threw objects and slammed doors and the examiner’s note that the Veteran acknowledged a “marked pattern of homicidal ideation.” The Board must point out that the November 2008 private psychological evaluation does not indicate that the Veteran suffered from the symptoms of persistent danger of hurting himself or others. Instead, the psychologist relayed the Veteran’s report of violent incidents and the Veteran’s acknowledgment of a marked pattern of homicidal ideation. Notably, the psychologist did not initiate action to have the Veteran hospitalized which suggests that he was not viewed as a persistent danger to anyone. Also of note, at the April 2008 VA examination the Veteran denied suicidal ideation. During the June 2016 VA examination the Veteran admitted to suicidal ideation but indicated he was certain he would not act on it. As discussed below, even considering these reported events and symptoms, no clinician or examiner has found the Veteran to be totally impaired occupationally and socially as is contemplated in a higher, 100 percent, rating. 38 C.F.R. § 4.130. 
Regarding delusions and hallucinations, at the April 2008 VA examination the examiner noted that there was no evidence of audio or visual hallucinations. The Veteran denied hallucinations and delusions at the February 2010 VA examination. Treatment notes also show multiple denials of hallucinations and delusions. 
Regarding the ability to perform activities of daily living (ADLs) including maintenance of minimal personal hygiene, the April 2008 examiner noted that ADLs were within normal limits. At the February 2010 VA examination the Veteran had adequate hygiene and performed his ADLs independently. 
Regarding orientation, at the April 2008 VA examination and the November 2008 private evaluation the Veteran was reportedly oriented. Treatment records also reflect that the Veteran was oriented, and no providers have indicated that the Veteran is disoriented to time or place to a significant degree. Likewise, the evidence does not demonstrate the type of memory loss contemplated by a higher rating. While some memory issues were noted by the November 2008 private examiner, memory testing at that time was within normal limits. Memory was noted as good at the February 2010 VA examination. Memory loss was noted to be only mild at the June 2016 VA examination. 
Regarding social impairment, at the April 2008 VA examination the Veteran reported being with his present girlfriend for 24 years, that he had few friends, and that he interacted with family members. At the February 2010 VA examination the Veteran reported that his girlfriend had left him, but that he socialized with his brother and had contact with and lived with his sister. At the 2016 examination the Veteran reported he continued to not have good relationships with his sons and that he was no longer with his girlfriend. He did not reference his siblings other than to say he did not deal with his family and friends. Regardless, even considering these reports the examiner declined to find total social and occupational impairment. 
Considering all the foregoing, including all the medical records and the lay statements of record, the Board finds that, the Veteran’s service-connected PTSD has not met, or more closely approximated, the criteria for a maximum 100 percent rating at any point since the effective date of the award of service connection. See 38 C.F.R. §§ 4.3, 4.7. 
In this regard, at no point has the Veteran manifested total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place, or memory loss for names of close relatives, own occupation, or own name. The Board notes that even though the Veteran indicated experiencing suicidal and homicidal ideation in November 2008, March 2010, and June 2016, such ideation was specifically noted or indicated to be without any intent to act, indicating no danger, let alone persistent danger, of the Veteran hurting himself or others. Also, the Board notes that even though the Veteran indicated experiencing some memory impairment in November 2008 and June 2016, such impairment did not rise to the degree of memory loss for names of close relatives, own occupation or own name. In addition, the Veteran has consistently denied having hallucinations or delusions. Also, the Veteran has consistently been noted to be oriented to time and place and to otherwise have coherent speech and thought processes. It has also been consistently indicated that the Veteran is able to perform activities of daily living, has adequate hygiene, and manages to shop for himself, and maintain his personal finances. The assertion in the JMR and the attorney’s statements that the Veteran has gross impairment in communication or grossly inappropriate behavior are not supported by the record. Thus, the Board finds that, at no pertinent point, has the Veteran manifested symptoms of the type, and extent, frequency, and/or severity contemplated by the maximum, 100 percent schedular rating. 
In support of the above, the Board must point out that regarding overall impairment, the evidence suggests occupational and social impairment that is less than total. The April 2008 VA examiner noted an occasional decrease in work efficiency as well as an inability to perform social tasks. The November 2008 private examiner noted difficulties in multiple areas including social functioning, employment functioning, family relationships, judgment-related issues, thinking difficulties, and mood, which is similar to the 70 percent criteria (occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood). 38 C.F.R. § 4.130. The February 2010 VA examiner described some impairment in the Veteran’s ability to enjoy certain social activities and complicated social relationships, noting that the PTSD was moderate. The June 2016 VA examiner found the Veteran had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. Thus, with knowledge of the Veteran’s overall symptomatology, the examiners appear in agreement that while impairment is present as a result of the Veteran’s PTSD, the impairment is not total. 

(CONTINUED ON NEXT PAGE)
The preponderance of the evidence is against the claim for the assigment of a 100 percent rating for the Veteran’s service-connected PTSD and the claim is denied. 

 
Nathan Kroes
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD D. Havelka, Counsel