Citation Nr: 1722229 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 12-03 580 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to an initial disability rating in excess of 50 percent for posttraumatic stress disorder (PTSD) prior to July 18, 2013, and an in excess of 70 percent thereafter.

2. Entitlement to a total disability evaluation based upon individual unemployability (TDIU).


REPRESENTATION

Veteran represented by: Ralph J. Bratch, Attorney at Law


ATTORNEY FOR THE BOARD

A. Rocktashel, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1966 to September 1968.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in March 2011 by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina.

A Board decision in April 2016 denied the Veteran's claim of an evaluation in excess of 50 percent for PTSD prior to July 18, 2013, and an in excess of 70 percent thereafter. The Veteran thereafter appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In an Order dated in December 2016, the Court granted a Joint Motion for Remand (JMR) by the Veteran and VA General Counsel, to vacate the Board's decision and remand the case for readjudication in accordance with the JMR. In the JMR, the parties determined that the Board's April 2016 decision failed to properly state its reasons and bases because the decision did not discuss a January 2012 statement from the Veteran's wife, an August 2011 statement from the Veteran's friend J.G.B., and a January 2016 private vocational report.

In a January 2017 correspondence, the Veteran's attorney requested an extension of time until April 19, 2017 to render a decision in this matter. As the Board's review of the matter did not take place until after the April 19, 2017 date, the extension request has effectively been granted. 

TDIU was on appeal and remanded in the April 2016 Board decision. The AOJ has not readjudicated the issue nor re-certified the issue to the Board. However, apart from readjudication, the development has been substantially accomplished. In light of the Board's decision hereunder, there is no prejudice to the Veteran for appellate review.




FINDINGS OF FACT

1. Prior to July 18, 2013, the Veteran's service-connected PTSD was manifested by symptoms such as episodes of depressed mood, avoidance, anxiety, sleep disturbance, intrusive thoughts, anger, and hypervigilance, productive of no more than occupational and social impairment comparable to reduced reliability and productivity.

2. Since July 18, 2013, the Veteran's service-connected PTSD was manifested by symptoms such as episodes of depressed mood, avoidance, anxiety, sleep disturbance, intrusive thoughts, anger, hypervigilance, grooming deficiencies, and suicidal ideation productive of no more than occupational and social impairment with deficiencies in most areas.

3. The Veteran is unable to secure and maintain substantially gainful employment due to his service-connected PTSD.


CONCLUSIONS OF LAW

1. The criteria for entitlement to an evaluation in excess of 50 percent for PTSD prior to July 18, 2013, have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.126, 4.130, Diagnostic Code 9411 (2016).

2. The criteria for entitlement to an initial staged evaluation in excess of 70 percent for PTSD, since July 18, 2013, have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.126, 4.130, Diagnostic Code 9411 (2016).

3. The criteria for an award of a TDIU have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.15, 4.16 (2016).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Initially, the Board notes that neither the Veteran nor his attorney have raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). 

Ratings Principles

Disability ratings are determined by applying the criteria established in VA's Schedule for Rating Disabilities, which is based upon the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.20 (2016). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher evaluation is assigned if the disability more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the claimant. 38 C.F.R. § 4.3 (2016). Consideration must be given to increased evaluations under other potentially applicable Diagnostic Codes. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

Where the appellant has expressed dissatisfaction with the assignment of an initial rating following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999). The pendency of the issue in this instance dates to the original rating decision granting service connection. Id. Consequently, the Board will evaluate the Veteran's psychiatric disorder as a claim for a higher evaluation of the original award.

The Veteran has been assigned a 50 percent rating and 70 percent rating at different stages for his PTSD pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9411. Diagnostic Code 9411 provides that a 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbance of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted where there is objective evidence demonstrating occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to suicidal ideation; obsessional rituals which interfere with routine activities, speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, or effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation, neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and the inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

Use of the term "such symptoms as" in § 4.130 indicates that the list of symptoms that follows is non-exhaustive, meaning that VA is not required to find the presence of all, most, or even some of the enumerated symptoms to assign a particular evaluation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013); see Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

The Global Assessment of Functioning (GAF) scale reflects the psychological, social and occupational functioning under a hypothetical continuum of mental illness. See American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV). See also Carpenter v. Brown, 8 Vet. App. 240, 243 (1995); 38 C.F.R. § 4.130. GAF scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A GAF score of 31 to 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). See 38 C.F.R. § 4.130 [incorporating by reference the VA's adoption of the DSM-V, for rating purposes].

While the Rating Schedule indicates that the rating agency must be familiar with the DSM-V, VA does not assign disability percentages based solely on GAF scores. See 38 C.F.R. § 4.130. Rather, GAF scores are but one factor to be considered in conjunction with all the other evidence of record.

Analysis

The Veteran seeks an evaluation in excess of 50 percent prior to July 18, 2013, and in excess of 70 percent thereafter for his service-connected PTSD. 

On this record, a July 2010 treatment note and an August 2010 addendum note show the Veteran was alert, oriented, and in no acute distress. There was no evidence of altered mental status, reality sense was intact, and the Veteran expressed a positive future orientation. He reported depressed mood and intrusive memories of friends' deaths in Vietnam. His chief complaint was being quick to anger.

The Veteran presented on time, was alert and oriented, but clearly tense. He reported discomfort being in mental health clinic stating he came in only at the urging of his wife and friends who were concerned about a quick temper about simple things, overreactions to loud noises, and poor mood after seeing things which remind him of Vietnam. The Veteran admitted becoming too angry too easily and being distressed by the way he talks to his wife.

The Veteran also reported feeling antisocial with a loss of interest in socializing with friends, discomfort around people in general, and diminished interest and motivation for previously enjoyed hobbies - such as fishing. He also reported poor sleep with restlessness when in bed. The clinician noted a history of significant alcohol use with abstinence for the past two months.

The Veteran's occupation was noted as a part-time plumber. The mental status examination showed normal psychomotor activity, appropriate hygiene, alertness, and pleasant and cooperative behavior with good eye contact. Affect was appropriate with constricted range. The Veteran reported experiencing repeated disturbing memories, thoughts, images, and disturbing dreams of his PTSD trauma "quite a bit."

The clinician noted "CAPS" was below threshold indicating symptom intensity and frequency did not meet full criteria for diagnosis of PTSD. The Veteran was reported to be very tense and hyperalert. A GAF score of 55 was assigned.

A September 16, 2010 VA treatment note revealed good eye contact. Mood was stable and appropriate for the appointment context and affect was congruent with mood. The Veteran denied suicidal and homicidal ideation. Otherwise, the findings were similar to the previous note.

September 23, 2010 VA treatment records show the Veteran was most troubled currently by depressed mood and nightmares. A mental status examination showed appropriate appearance, reserved and polite behavior, normal speech, mildly reduced psychomotor activity, mild to moderately depressed and anxious mood and affect, and logical and linear thought process. The Veteran denied suicidal and homicidal ideation. Judgment was appropriate and insight was fair. A GAF score of 46 was assigned. Symptoms were noted as moderate.

An October 2010 VA treatment note reports that, on a mental status examination, the Veteran was alert with fair eye contact. There was no psychomotor disturbance. Speech was normal in rate, tone, and volume. Grooming and hygiene were good. The Veteran was oriented to person place and time. Mood was depressed and affect was congruent with mood. The Veteran's thought process was linear, logical, and goal directed. There was no evidence of perceptual disturbances, and no suicidal or homicidal ideation. The Veteran reported less intrusions and nightmares over the prior week, attributing the change to medication. The Veteran continued to report high levels of alcohol intake with minimal interest in changing. In another October 2010 appointment, the Veteran was fidgeting and depressed.

In November 2010 VA mental health notes, the Veteran was reported as having fair eye contact, as fidgeting, as having normal speech, good grooming and hygiene, and as being depressed. He denied suicidal and homicidal ideation. He noted some overall improvement, particularly with respect to nightmares. He was not sure if the medication was helpful. In another note, his psychomotor activity was mildly reduced. His mood was mild to moderately depressed and anxious but some overall improvement compared with last apt. A GAF score of 46 was assigned.

January 2011 VA treatment records show the Veteran' reported his mood as being "down a little...thoughts are better." The Veteran was reported to be appropriately dressed. He was mild to moderately depresses and anxious. A GAF score of 46 was continued.

The Veteran underwent a VA psychiatric examination in February 2011. The examiner described the Veteran as attired in working clothes, moaning and groaning, flushed, downward gazing, and stolid in his responses. It was noted that the Veteran had been married for 27 years with no children. The Veteran brought in his several medications. The Veteran reported being under-employed and having lost time from work to PTSD. However, he stated "I really believe that I am better when I work it takes my mind off things and I feel better about myself. Also time goes faster." The Veteran estimated working 20 to 25 hours per week, but noted it was "slow out there."

The Veteran described his experiences in Vietnam. The Veteran explained that after service in Vietnam he felt compelled to drink "all the time." He said he does not want to be around crowds. He keeps his back to the wall so he can see what is going on. 

The Veteran reported having psychiatric symptoms about 4 times a week, apparently in the form of nightmares. The Veteran reported that the medicine help some. As to social relationships, the Veteran stated that he sometimes does not "want to have anything to do with folks," however, sometimes, he was "all right." He indicated he drinks a quart of alcohol a night.

The Veteran denied "assaultiveness" in recent times. The Veteran indicated he would get aggressive when he drank, but recently, he would just get "peaceable." The Veteran denied suicidal ideation, delusions, and hallucinations. The examiner noted a lack of complaints of impairment of thought processes or communication. Eye contact and interaction in the session was appropriate. Homicidal thoughts were not present. Personal hygiene was fair. The Veteran was oriented to person, place, time, situation, and purpose. The Veteran endorsed a great deal of memory loss. Obsessive and ritualistic behavior was denied. Speech was slow, careful, quiet, and directed at the carpet, for the most part. The Veteran indicated that he did not think he suffered from panic attacks. Depression was endorsed.

The examiner related alcohol abuse to the Veteran's PTSD. The examiner also noted "minor memory loss." The examiner described the Veteran's condition as "moderately severe," stating that there is an "aridity of life, with depression and lack of spirit, motivation." The Veteran was assigned a GAF score of 54.

In March 2011 VA treatment, the Veteran reported that his mood was "not so good." He was noted to be mild to moderately depressed and anxious. A GAF score of 65 was assigned.

May 2011 VA treatment records show the Veteran and his wife having arguments mostly around his drinking. The Veteran reported his work had slowed down a great deal. The Veteran's mental status showed appropriate appearance in work clothes dress, cooperative behavior, dysphoric mood and affect. Otherwise, symptoms were similar to those previously discussed. A GAF score of 55 was assigned.

Additional records from May 2011 show the Veteran noting overall improvement in mood and motivation, appearing more animated and spontaneous. The lack of full time work affected his mood. Nightmares were reported as being under much better control. A GAF score of 65 was assigned.

A mental status report from July 2011 revealed a GAF score of 65. The report noted overall improvement in mood and motivation. The Veteran appeared more animated and spontaneous. Occasional intrusive memories and avoidance symptoms were noted as continuing. Work was still intermittent and this affected his mood. He was working at that time and this had improved his mood accordingly. Nightmares were under much better control but he still noted some sleep disturbances. No suicidal ideation or homicidal ideation or other acute problems were present at that time.

On examination, the Veteran was noted to be casually and appropriately attired. His behavior was reserved and polite. His speech was normal. His psychomotor activity was mildly reduced. His mood was mild to moderately depressed and anxious but some overall improvement compared with the last appointment. His affect was congruent with mood. His thought process was logical and linear. His judgement was appropriate and his insight was fair.

Treatment records for August 2011, September 2011, November 2011 VA treatment are similar. The Veteran continued to report sleep disturbances. His mood was euthymic in some notes, and mild to moderately depressed in other notes. In August 2011, his mood was dysphoric. He reported working intermittently. Grooming was appropriate. Occasionally he was dressed in work clothes. 
GAF scores of 55 to 65 were generally reported.

A January 2012 VA treatment note shows decreased intensity of nightmares but continued other sleep disturbances. Mood was mild to moderately depressed and anxious but with continued improvement. Suicidal and homicidal ideation was not present. A GAF score of 67 was assigned. At treatment later in January 2012, the Veteran presented with appropriate hygiene and a euthymic mood. A GAF score of 60 was assigned.

In February 2012 VA treatment, the Veteran's wife reported, with respect to the severity of his sleep disturbances, that he "looks like he's fighting, thrashing about, crying out..." The Veteran did not recall these episodes which occurred virtually nightly. He acknowledged that the intensity of nightmares had decreased since starting prazosin. A mental status examination was similar to previous ones. The Veteran was appropriately groomed and was mild to moderately depressed and anxious.

May 2012 mental health notes show ongoing sleep disturbances, intrusive memories, avoidance of reminders, and hyperarousal symptoms including irritability, occasional insomnia, and difficulty with concentration. Dreams were less intense. Overall mood was more stable compared with the baseline. Work was going well. Mood was mild to moderately depressed and anxious. A GAF score of 65 was assigned.

In September 2012, the Veteran was seen at VA for substance abuse treatment. Initially, the Veteran reported nightmares every night that resolve with him waking up, thrashing or falling out of the bed. He described his sleep as being less than 6 hours nightly, waking up three to four times per night, and waking up tired. The Veteran reported feeling stressed due to his plumbing business being slow and financial difficulties. He reported feeling "down" every day, decreased interest and decreased concentration. His appetite was normal. He denied feelings of guilt, suicidal and homicidal ideation, and auditory and visual hallucinations. He presented with appropriate hygiene and grooming. He was alert, pleasant and cooperative with good eye contact. His mood was slightly dysphoric. Memory and cognition were grossly intact. A GAF score of 55 was assigned.

Follow-up notes from the substance abuse treatment that month show the Veteran denied problems with mood, sleep, or appetite. He answered questions with brief responses. He showed normal rate, rhythm, and tone in speech. He was euthymic. He had a constricted affect. In later records, he was slightly agitated initially but "relaxed towards the end." He was assigned a GAF score of 55. 

Pursuant to the Board remand, the Veteran underwent a VA psychiatric examination in July 2013. The examination report notes that the Veteran has been treated for "chronic war related PTSD of moderate severity in the PTSD program at the Ralph Johnson VAMC in Charleston." The examiner noted that the Veteran exhibited significant occupational impairment, working less and getting less work, and recently made a significant error in his work. The Veteran reported he had been working 10 hours or less. He reported getting fewer offers and accepting fewer jobs because he did not want to be around people and had no motivation to take on new work. Family relations had deteriorated with his wife, he avoided both his sisters, had no friends, and would never invite others to their home. His personal hygiene had deteriorated. He had "more frequent thoughts of suicide." He endorsed more problems with concentration, noting that he misplaced things (i.e. keys, phone, and tools).

The Veteran's wife was also present during the examination. They both indicated that the Veteran's PTSD had worsened in the previous two years. The Veteran endorsed nightmares nearly every night, and fragmented and unrestful sleep despite medications. He reported repeated intrusive memories and thoughts of war events, re-experiencing combat, being physically and emotionally upset when reminded of combat, avoiding thinking about and not speaking about his war experience. It was noted he has never discussed the war experience with his wife. He endorsed pervasive anhedonia, emotional blunting, feeling that his future would be cut short, significant irritability subjectively, hypervigilance and easy startling. He also endorsed problems with concentration.

The Veteran further endorsed a depressed mood with thoughts of suicide occurring more often than in the past, feeling that life is not worth living but not wanting to die. He has no plan or intent to commit suicide. The Veteran was described as a recluse, leaving the house only go to the VFW in the afternoon where he would drink up to a quart of bourbon or vodka. The only socializing that he would do was when he and his wife go to the VFW for a dinner or other event. In those circumstances, his wife indicated that he sits in a corner drinking quietly and interacting very little with others.

His relationship with his wife had deteriorated further since the last examination. She reported that he has had angry outbursts toward her, has been verbally abusive and non-communicative. Intimacy, either physical or emotional, between them has decreased.

The examiner described the Veteran as unkempt, wearing a dirty t-shirt, and being unshaven. His wife reported that he had gradually begun to neglect his personal hygiene. He has to be reminded to clean up and put on clean clothes. The examiner reported that the majority of the symptoms endorsed by the Veteran were a result of his chronic PTSD. The examiner opined that the Veteran's condition is manifested by "occupational and social impairment with deficiencies in most areas such as work school family relations judgment thinking and/or mood."

The examiner noted that the Veteran's psychomotor activity exhibited "increased latency to respond." His affect was restricted and primarily serious. The Veteran endorsed passive suicide ideation. He exhibited no homicidal ideation. He denied delusions or hallucinations. Cognition was grossly intact. The Veteran was oriented to time, place and purpose of the examination. Judgment was impaired with respect to not appreciating the consequences of drinking and working less. Insight was limited. The PTSD was noted to be severe and chronic. Based on these findings a GAF score of 48 was assigned. 

An August 2015 depression screen was negative. The Veteran denied all of the symptoms, such as feeling down, depressed or hopeless, trouble falling asleep, trouble concentrating, and thoughts of being better off dead.

A January 2016 private vocational assessment indicated the Veteran was vocationally disabled since September 2010. The practitioner noted that the Veteran "reportedly last worked on a fairly consistent basis in 2010 when his psychiatric symptoms worsened and he was no longer able to pursue or perform work in a consistent substantially gainful basis." The practitioner further stated that the Veteran "underwent a follow-up PTSD C&P examination in February 2011" at which time a GAF score of 46 was assigned. The clinician opined that the Veteran would meet the definition of a 70 percent evaluation since 2010, based on a review of the records.

The Board also considered the lay statements from the Veteran, his wife, and two friends in support of his claim. In a May 2012 statement, the Veteran reported having nightmares about Vietnam, only sleeping about 4 hours a night, waking up tired, and going to work sleepy. He stated he liked working by himself so he would not have to deal with others. He further reported he was not much of a socializer and typically like to work and drink by himself. He stated that his relationship with his wife was not "the greatest" and that they fought all the time.

In an August 2011 statement, the Veteran's common law wife characterized the Veteran's "biggest issues" as flashbacks that occur at night. She described how he would cry and scream and move around like he was fighting to get away from someone. She reported the Veteran also experienced flashbacks during the day. She further reported that the Veteran appeared depressed on a daily basis, was irritable and would "fly off the handle" on a daily basis, and had memory problems that included forgetting people's names and trouble concentrating.

In an August 2011 statement, J.G.B., who has known the Veteran for over seventeen years, reported that the majority of the time, the Veteran was depressed. J.G.B further reported that the Veteran could be anxious at times, and that his "hygiene could be better, especially when it comes to shaving."

In August 2011, R.W., friends with the Veteran for about 25 years, stated that he did not believe the Veteran had many friends. R.W. also noted that the Veteran seemed depressed, could be panicky, and that "[s]ometimes [the Veteran] has the '1000 yard stare' and seems to be in another place for a moment."

A January 2012 statement from the Veteran's wife indicated the Veteran was getting worse. She also stated that his nightmares were so bad she could not sleep, and that his temper is so bad it scared her and made her want to leave. She also stated the Veteran has "lots of friends," however, he flies off the handle with them a lot. She further stated that he sits and stares into space frequently. Further, she stated he lacked interest in how he looked and would leave the house without shaving or showering.

Based on the foregoing, the Board finds that an evaluation in excess of 50 percent prior to July 18, 2013 is not warranted. Beginning July 18, 2013, the Board finds an evaluation in excess of 70 percent is not warranted. Increased ratings are not warranted because the disability picture at each stage does not more nearly approximate the criteria required for the higher evaluation. 38 C.F.R. § 4.7 (2016). As the VA examinations note that alcohol abuse is secondary to chronic PTSD, the Board includes symptoms of the alcohol abuse in its findings.

With respect to the first portion of the appeal period, the Board finds probative the February 2011 VA examiner's overall assessment that PTSD was moderately severe. Additionally, in numerous treatment reports during the first stage, the Veteran's mood symptoms are often reported as "mild to moderate." 

The Board acknowledges the Veteran experienced a variety of symptoms. However, the symptoms that predominated were quickness to anger, mood disturbances, and sleep disturbances. Other symptoms appeared to be of mild severity, infrequent, or short in duration. For instance, "hygiene could be better" represents mild symptoms, as does a "few moments," "sometimes" related to the "1000 yard stare." Forgetting people's names and trouble concentrating, when compared to the VA medical records that generally indicate memory was intact, indicate mildness. 

The Veteran's quickness to anger was perhaps a frequent occurrence, it appeared to moderate in severity and short in duration. Mood disturbances fluctuated throughout the first stage of the appeal period. Predominantly, the Veteran was mild to moderately depressed. At times, however, he was euphoric. At other times, he was dysphoric. Finally, his sleep disturbances were ever-present, but they improved during the applicable period. 

Reconciling the evidence into a consistent disability picture, the Board finds that the impairment of the Veteran's occupational and social functioning did not more nearly approximate occupational and social functioning with deficiencies in most areas. In this regard, the Veteran's occupational functioning, while decreased, appeared to be largely due to external forces (i.e. business was slow). See February 2011 VA examination report. In fact, during this stage, on several occasions, the Veteran expressed a desire to work more, and that he was depressed due to the business being slow, rather than the case of the Veteran not working because he was depressed. 

With regard to social functioning, the Veteran was able to maintain friendships, as evidenced by having two individuals provide statements in support of this claim. See August 2011 statements from J.G.B. and R.W. Additionally, the Veteran's wife indicated that the Veteran "has lots of friends." See January 2012 statement from spouse. While the Board acknowledges the Veteran's symptoms negatively impacted his friendships, the Board finds the impact was moderate.

GAF scores for the period also support the Board's occupational and social impairment findings. The scores ranged from a low of 46 on a few occasions, to many scores in the 50's and 60's. These scores indicate that, on the whole, the Veteran's symptoms were moderate. 
Although the Veteran's wife in January 2012 and friend J.G.B. in August 2011 stated that the Veteran's grooming and hygiene were poor, this statement is contradicted by numerous VA treatment records that indicate the Veteran's appearance was appropriate. The Board gives greater weight to the VA treatment records and the February 2011 VA examination report, the assessments of which were made by learned professionals with experience in evaluating mental health symptoms and status.

With respect to the wife's statement that the Veteran's temper was so bad she wanted to leave a lot of times, and that he flies off the handle with his friends, the Board finds these to be contemplated in the 50 percent evaluation currently in effect. The Veteran's quickness to anger is one of the symptoms that contributes significantly to qualifying for the current 50 percent evaluation. 

Finally, with respect to the January 2016 private vocational assessment, the Board finds that the assessment lacks credibility because it is based upon an inaccurate factual premise. Specifically, the assessment called the February 2011 VA examination a "follow-up," when in fact it was the initial examination. The July 2013 examination, on the other hand, is perhaps better described as a "follow-up" examination. Furthermore, the assessment stated that a GAF score of 46 was assigned in the February 2011 VA examination. In fact, a GAF score of 54 was assigned in the February 2011 VA examination. The examination report merely referenced VA medical records in which a GAF score of 46 was assigned. Accordingly, the Board affords very little weight to the January 2016 assessment. 

A 100 percent evaluation is not warranted for the period beginning July 18, 2013, because the evidence did not establish symptoms severe enough to produce total occupational and social impairment. The Veteran was able to maintain friendships as well as a long term relationship with his wife, albeit poor. He was able to work, and expressed that he preferred to be working. Other indicia against a higher evaluation include that the Veteran denied suicidal and homicidal ideation, thought processes were not grossly impaired, and he was able to maintain minimum standards of personal hygiene and to perform activities of daily living. Additionally, violence was not a component of the Veteran's quickness to anger. When reconciling the various reports and evidence into a consistent disability picture, the Board finds the impairment did not rise to the level of total occupational and social impairment.

The Board notes that in the July 2013 VA examination, the Veteran reported "more frequent thoughts of suicide." Although this statement implies that at some point prior to this examination the Veteran experienced suicidal ideation, the implication is vague as to date of onset of the ideation. Therefore, the Board finds the Veteran's statement in the July 2013 VA examination has minimal probative value. Further, the Board notes that although the Veteran experienced suicidal ideation without intent or plan, the record did not show that he was at risk for self-harm. Therefore, he is not a persistent danger of hurting himself, which is contemplated by the 100 percent rating criteria. See Bankhead v. Shulkin, No. 15-2404 LEXIS 435 (U.S. Vet. App. Mar. 27, 2017).

With respect to the period beginning July 18, 2013, the Board acknowledges the Veteran's hygiene noticeably worsened, and he experienced suicidal ideation. Additionally, his ability to work worsened. 

Nonetheless, the Board finds most probative the 2013 VA examiner's conclusion that the level of occupational and social impairment was with deficiencies in most areas such as work, school, family relations, judgment, thinking and/or mood. The Board finds this conclusion supported by the evidence. Although the Veteran's relationship with his wife was poor, the relationship nonetheless existed and had for numerous years. Although physical and emotional intimacy was decreased, the implication is that it was still present. Judgment and insight were limited, but not grossly impaired. Finally, the Veteran was able to work some, although to a marginal extent. Therefore, the Board finds the Veteran's disability picture does not more nearly approximate the criteria for a 100 percent evaluation.

In sum, the impact of the Veteran's symptoms is found to be moderately severe prior to July 18, 2013. The preponderance of the evidence indicates a worsening of the symptoms was the July 2013 examination report. While the symptoms were noted to have increased in severity and frequency in 2013, the symptoms and their impact on the Veteran's social and occupational functioning have not been shown to warrant a higher rating during either stage of the appeal period.

In reaching this decision, the Board considered the doctrine of reasonable doubt. However, as the preponderance of the evidence is against the Veteran's claim for an increased evaluation, the doctrine is not for application. 38 C.F.R. § 4.3 (2013). 

Entitlement to a TDIU

In the July 2013 VA examination the examiner opined that that it is at least as likely as not that the Veteran's service-connected PTSD precludes him from performing his usual occupation as a plumber and would prevent his securing substantially gainful employment for which his 9th grade education and occupational experience would otherwise qualify him. This Board finds this evidence to be credible and highly probative.

The Board notes that the Veteran has indicated he works as a plumber intermittently and perhaps 10 hours per weeks. To determine if this work is marginal employment, pursuant to a directive in the April 2016 Board remand, the Veteran's tax returns for the years 2014 and 2015 were obtained. They show the Veteran operated his own plumbing business and earned a net profit of approximately $7000 in both 2014 and 2015. The Veteran's total income was approximately $8,000 in 2014 and approximately $11,500 in 2015. The U.S. Census Bureau poverty thresholds for a two person household 65 years and over (i.e. the lower threshold) in 2014 was $14,326 and in 2015 was $14,342. As the Veteran's income falls below these thresholds, and he is deemed unable to work more hours at his plumbing job, the Board finds the Veteran's employment is marginal. Accordingly, a TDIU is warranted.


ORDER

An initial evaluation in excess of 50 percent prior to July 18, 2013, and in excess of 70 percent beginning July 18, 2013, is not warranted.

A total disability evaluation based upon individual unemployability is granted.



____________________________________________
D. Martz Ames
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs