Citation Nr: 1806326 
Decision Date: 01/31/18 Archive Date: 02/07/18

DOCKET NO. 06-38 570 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to an initial evaluation in excess of 30 percent prior to July 28, 2010, and 70 percent thereafter, for posttraumatic stress disorder (PTSD) with paranoid personality disorder.


REPRESENTATION

Appellant represented by: Pennsylvania Department of Military and Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant




ATTORNEY FOR THE BOARD

Christopher Murray, Counsel


INTRODUCTION

The Veteran had active military service from July 1977 to July 1981.

This case initially came before the Board of Veterans' Appeals (Board) on appeal of a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania.

The Veteran testified before the Board at an August 2014 hearing conducted via videoconference. A transcript of the hearing is of record. 

This case was previously before the Board in May 2017, at which time the appeal was remanded to the Agency of Original Jurisdiction (AOJ) for further development.


FINDINGS OF FACT

1. Prior to July 28, 2010, the Veteran's PTSD was manifest by no more than moderate symptomatology resulting in occupational and social impairment with reduced reliability and productivity; occupational and social impairment with deficiencies in most areas or total occupational and social impairment is not demonstrated.

2. As of July 28, 2010, the Veteran's PTSD is manifest by serious symptomatology resulting in occupational and social impairment with deficiencies in most areas; total occupational and social impairment is not demonstrated.


CONCLUSIONS OF LAW

1. The criteria for an initial evaluation of 50 percent, but not greater, have been met prior to July 28, 2010. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.7, 4.130, Diagnostic Code 9411 (2017).

2. The criteria for an initial evaluation in excess of 70 percent as of July 28, 2010, have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.7, 4.130, Diagnostic Code 9411 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). See also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004). VA must also make reasonable efforts to assist the appellant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159.

The Veteran has been provided notice letters throughout the appeal that address all notice elements required. All pertinent treatment records identified by the Veteran have been obtained, and VA examinations have been provided where warranted. There has been no allegation of errors with the duties to notify and/or assist in the instant case. See Shinseki v. Sanders/Simmons, 556 U.S. 396 (2009); see also Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (the Board's obligation to read filings in a liberal manner does not require the Board to search the record and address procedural arguments when the Veteran fails to raise them before the Board); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

As noted above, the instant appeal has been previously remanded in May 2017. There has been substantial compliance with the Board's remand directives as they pertain to the issue decided herein, and adjudication of the appeal may proceed. See Stegall v. West, 11 Vet. App. 268, 271 (1998). In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the appellant in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C. §§ 5103 and 5103A; 38 C.F.R. § 3.159.

Analysis

Board decisions must be based on the entire record, with consideration of all the evidence. 38 U.S.C. § 7104. The law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. Timberlake v. Gober, 14 Vet. App. 122 (2000). The Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000).

It is VA's defined and consistently applied policy to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt it is meant that an approximate balance of positive and negative evidence exists which does not satisfactorily prove or disprove the claim. Reasonable doubt is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in the VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. The Veteran's entire history is reviewed when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

Evidence to be considered in the appeal of the assignment of a disability rating is not limited to that reflecting the then current severity of the disorder. Fenderson v. West, 12 Vet. App. 119 (1999). In cases where an initially assigned disability evaluation has been disagreed with, it is possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period (i.e., "staged ratings"). Fenderson at 126-28; see also Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran's PTSD has been assigned an initial evaluation of 30 percent prior to July 28, 2010, and 70 percent thereafter, pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9411. The rating criteria pertaining to the Veteran's appeal is subsumed into the General Rating Formula for Mental Disorders (General Rating Formula). 

Under the General Rating Formula, a 30 percent evaluation contemplates occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, and recent events). Id. 

A 50 percent evaluation is warranted where the disorder is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory for example, retention of only highly learned material, forgetting to complete tasks; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent evaluation is warranted where the disorder is manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and an inability to establish and maintain effective relationships. Id.

A 100 percent disability evaluation is warranted when there is total occupational and social impairment, due to such symptoms as: persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. Id.

Initially, the Board notes that references in the rating schedule to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) has been replaced with references to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). However, these changes are not intended to apply to claims that were pending before the Board on or before August 4, 2014. See 80 Fed. Reg. 14308 (Mar. 19, 2015). As the instant appeal was certified to the Board prior to August 2014, the Board will consider the nomenclature contained within the DSM-IV. Significantly, the DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995).

The DSM-IV contemplates that the GAF scale will be used to gauge a person's level of functioning at the time of the evaluation (i.e., the current period) because ratings of current functioning will generally reflect the need for treatment or care. While GAF scores are probative of the Veteran's level of impairment, they are not to be viewed outside the context of the entire record. Therefore, they will not be relied upon as the sole basis for an increased disability evaluation.

Finally, ratings are assigned according to the manifestations of particular symptoms. However, the use of the phrase "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve only as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). The evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the General Rating Formula. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM-IV.

As noted above, the Veteran's PTSD has been assigned an evaluation of 30 percent prior to July 28, 2010, and 70 percent thereafter. After reviewing the evidence of record under the laws and regulations as set forth above, and resolving all doubt in the Veteran's favor, the Board concludes that an initial 50 percent evaluation is warranted throughout the period prior to July 28, 2010. However, the Board finds that a preponderance of the evidence weighs against the assignment of an evaluation greater than 50 percent prior to July 28, 2010, or 70 percent thereafter. 

Prior to July 28, 2010

Turning to the record, at a May 2007 VA examination, the Veteran reported a feeling of detachment and estrangement with a lifelong problem relating and connecting to people, though he also reported having 20-25 friends he sees on a daily basis or once a week. Subjectively, he reported having intrusive thoughts and problems sleeping, having dreams and nightmares about the incidence which caused his PTSD, though he denied flashbacks. He reported his level of concentration depended on the task at hand, and there was no evidence of hypervigilance or hyper startled response. Objectively, he was oriented in all spheres and was cooperative for the most part, but some passive restraint was also noted. His affect was flat and mood dysphoric. Thought process was logical, relevant, and goal-directed, and thought content was centered in situation and the questions asked during the interview. His judgment was good, and recent and remote memory within normal limits. Finally, the Veteran denied any suicidal/homicidal ideations, plans, or intent. The VA examiner noted the Veteran had some difficulties affiliating and associating with others and, while he initially may be able to establish relationships, it was difficult for him to maintain them. The VA examiner assigned a GAF score of 68, indicating some mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well. See DSM-IV.

Also of record during this period of the appeal are statements provided by the Veteran's VA treatment providers. In a July 2005 statement, Dr. F.W. noted the Veteran was detached and alienated from others, and exhibited symptoms of irritability and outbursts of anger, resulting in a number of job changes over time. When faced with poor weather conditions, he would exhibit an inability to concentrate with increased anxiety. In a February 2008 statement, Dr. B.W. noted the Veteran's unstable vocational situation, which the Veteran attributed to a pattern of becoming angry and getting fired or released. Dr. B.W. noted the Veteran's treatment focused on maintaining control of his excessive anger and revenge fantasies, and his reactions were consistent with irritability/outbursts of anger and hypervigilance.

In a September 2008 statement, Dr. B.W. noted the Veteran reported frequent conflicts with other workers and supervisors, wherein his hypervigilance and irritability lead him to detect even the slightest inequity in treatment result in extreme anger actions. Finally, in a June 2010 statement, Dr. B.W. noted that the Veteran's symptoms had been generally consistent, with significant, long-lasting, and negative effects of PTSD. Dr. B.W. noted the Veteran was bright and hardworking but experienced near constant conflict with other workers and supervisors. His recreational activity pattern was very restricted and limited to the vicinity of reading, and he spent most of his time angry at someone or something and seemed to derive very little pleasure from his life.

Based on the evidence discussed above, as well as a number of treatment records and lay statements generated throughout this stage of the appeal, the Board finds that an evaluation of 50 percent is warranted prior to July 28, 2010. During this period, the Veteran exhibited a number of symptoms, including irritability, hypervigilance, and difficulty in establishing and maintaining effective work and social relationships resulting in occupational and social impairment with reduced reliability and productivity. However, the Veteran's PTSD does not result in serious symptoms with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood. In this regard, while the Veteran's treating VA suggested in September 2008 that the Veteran's PTSD would likely eventually lead to termination his in then-current employment, the Board notes the Veteran remained with this employer for a period of five years, and he reported in July 2010 as having lost no time at work due to symptoms of PTSD. As such, the Board finds that a preponderance of the evidence indicates that the Veteran's PTSD does not result in severe symptomatology so as to warrant an evaluation greater than 50 percent during this stage of the appeal. 

As of July 28, 2010

As noted above, as of July 28, 2010, the Veteran's PTSD has been assigned an initial 70 percent evaluation. In order to warrant a higher evaluation during this period, the Veteran's PTSD must be manifest by symptomatology so severe as to result in total occupational and social impairment. After reviewing the evidence of record, the Board finds that an evaluation in excess of 70 percent is not warranted at any point during this stage of the appeal.

In this regard, the Board notes there is no objective evidence of an inability to perform activities of daily living, including maintenance of minimal personal hygiene, or a disorientation to time or place. While the Veteran did report losing his job during this period, the record does not reflect such severe symptomatology resulting in total social impairment. In this regard, at a June 2015 VA examination, the Veteran stated he "kind of like[d]" his life, spending time with his buddies, going to concerts, and volunteering. At a July 2016 VA examination, the Veteran reported being engaged, volunteering at a museum, helping out retired people, and hanging around a friend's auto mechanic shop. This evidence clearly indicates the Veteran does not experience total social impairment due to symptoms of PTSD.

Final Considerations

The Board acknowledges the Veteran's contentions that his service-connected PTSD warrants initial evaluations greater than those assigned herein. However, in determining the actual degree of disability, an objective examination is more probative of the degree of the Veteran's impairment. Furthermore, the opinions and observations of the Veteran alone cannot meet the burden imposed by the rating criteria under 38 C.F.R. § 4.130 with respect to determining the severity of his service-connected PTSD. See Moray v. Brown, 2 Vet. App. 211, 214 (1993); see also Davidson v. Shinseki, 581 F.3d 1313 (2009).

Overall, the Board concludes that the evidence discussed above, as well as all other evidence of record not specifically addressed including VA treatment records, supports no more than a 50 percent evaluation prior to July 28, 2010, or a 70 percent evaluation thereafter. Accordingly, the Board finds that an evaluation of 50 percent is warranted prior to July 28, 2010, but the preponderance of the evidence is against an evaluation greater than 50 percent prior to this date, or 70 percent thereafter. 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 55.



 (CONTINUED ON NEXT PAGE)




ORDER

An initial evaluation of 50 percent, but not greater, for PTSD prior to July 28, 2010, is granted, subject to the law and regulations governing the award of monetary benefits.

An initial evaluation in excess of 70 percent for PTSD as of July 28, 2010, is denied.


____________________________________________
MICHAEL D. LYON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs